## A91A1591. CONNER v. THE STATE.
### (422 SE2d 872)

POPE, Judge.

Defendant James Conner was convicted of driving "under the influence of alcohol to the extent that it is less safe for the person to drive." OCGA § 40-6-391 (a) (1). He appeals from his conviction.

The undisputed facts show that an officer was called to the scene of an overturned vehicle in a rural area of Clayton County at 10:19 p.m. on August 7, 1990. Only one car was involved in the accident. The driver of the vehicle was not at the scene when the officer arrived. Approximately ten minutes after the officer's arrival, a van pulled up with defendant inside. The officer approached the van and learned that defendant was the driver of the overturned vehicle. During a conversation with defendant, the officer detected the smell of alcohol on defendant's breath. The officer again detected the odor of alcohol on defendant during a subsequent conversation. Defendant was treated at the scene for minor injuries, but declined to be trans-

ported to the hospital. The officer requested that defendant take an alcosensor test which indicated positive for the presence of alcohol. The defendant was placed under arrest and transported to the Clayton County jail where an Intoximeter 3000 test for blood alcohol content was performed. The result of this test was .14 grams.

Defendant does not contest the fact that he had been drinking alcohol before the test was administered. Rather, he argues he did not operate a motor vehicle under the influence of alcohol. He testified that he left the scene of the accident and walked to a nearby acquaintance's house. While at the house he contacted his brother-in-law who came over with five 16 ounce beers. According to the defendant's version of the facts, he consumed four of these beers at this time and was then driven to the scene of the accident.

The central dispute at trial involved what time the accident occurred. According to the defendant, the accident occurred at approximately 8:30 p.m. to 9:00 p.m. The arresting officer was summoned to the scene at 10:19 p.m. and arrived there at 10:30 p.m. No eyewitness to the accident testified as to the time at which it occurred.

1. Defendant argues the DUI testing scheme is unconstitutional in application because a presumption of scientific reliability of the Intoximeter 3000 treats similarly situated defendants differently on the basis of individual wealth. This court does not have jurisdiction to decide whether the DUI test scheme is unconstitutional. 1983 Ga. Const., Art. VI, Sec. VI, Par. VI. This case was originally filed in this court and by order dated December 31, 1991, we transferred this case to the Supreme Court on the basis that exclusive jurisdiction of this case was vested in the Supreme Court because of the constitutional issue raised by defendant. On January 17, 1992, the Supreme Court ordered that this case be transferred back to this court. "Inasmuch as all cases involving the constitutionality of any state law are solely within the jurisdiction of our Supreme Court and this case was transferred here, we deem that court to have determined that the constitutional issue was not properly raised or was otherwise not before the court on appellate review. Even if so raised, it was not meritorious." (Citations and punctuation omitted.) *In re J. S. S.*, 175 Ga. App. 361, 364 (1) (333 SE2d 417) (1985).

2. Defendant asserts the State did not meet its burden of establishing the Intoximeter 3000 used to test the defendant's blood-alcohol content was approved by the Department of Public Safety. In order to be admissible, a chemical analysis "shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose." OCGA § 40-6-392 (a) (1).

The State may meet its burden by introducing into evidence a

copy of the certificate to operate the Intoximeter 3000 issued by the Department of Public Safety to the individual conducting the test, which bears "the manufacturer, model and name of the instrument upon which the tests [were] performed." *Fowler v. State*, 200 Ga. App. 505 (1) (408 SE2d 449) (1991). See *Smitherman v. State*, 153 Ga. App. 322 (265 SE2d 119) (1980). The prosecution introduced the certificates of both the officer who administered the test for the current charge and the certificate of the officer who performed the test on defendant for the prior similar transaction. Therefore, the trial court properly admitted the results.

3. The defendant argues certain statements made by the defendant during a custodial interrogation before defendant had been read his *Miranda* rights should be suppressed.[1] To determine if defendant was in custody at the time he made the statements in question, we must decide whether a seizure within the meaning of the Fourth Amendment had occurred. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' *California v. Hodari D.*, 499 U. S. ___, ___ ([111 SC 1547, 1551, 113 LE2d 690]) (1991), the encounter is consensual and no reasonable suspicion is required. . . . 'Only when the officer, by means of actual physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.'" *Florida v. Bostick*, 501 U. S. ___ (111 SC 2382, 2386, 2388, 115 LE2d 389) (1991). Defendant cites testimony from the arresting officer that he had planned to arrest defendant at the time of the initial conversation with defendant. Defendant was not arrested, however, until after his conversation with the officer and his refusal to be transported to the hospital. "[T]he subjective intent of the officers is relevant to an assessment of the Fourth Amendment implications of police conduct only to the extent that that intent has been conveyed to the person confronted. *United States v. Mendenhall*, 446 U. S., at 554, n.6 [100 SC 1870, 64 LE2d 497] (opinion of Stewart, J.)." *Michigan v. Chesternut*, 486 U. S. 567, 575, n. 7 (108 SC 1975, 100 LE2d 565) (1988). Defendant has not shown that the officer ever conveyed his intentions to him, and therefore the police officer's statement is irrelevant to our determination of whether a seizure had already occurred.

Defendant has shown no competent evidence in the record, and

---

[1] The arresting officer testified that defendant initially denied having anything to drink. Subsequent to the alcosensor test which indicated positive for alcohol, defendant allegedly admitted having four drinks. Defendant testified he had no drinks prior to driving, but after the accident, he drank four 16 ounce beers at the nearby home of an acquaintance before he returned to the accident scene.

we find none, to support the conclusion that the defendant was in custody prior to his confession. Therefore, the trial court properly admitted the testimony concerning defendant's statement to the arresting officer.

4. Defendant contends the trial court erred in admitting evidence of his conviction for driving under the influence which occurred two years prior to this arrest. Two conditions must be satisfied before similar transactions evidence is admissible: There must be (1) "some evidence establishing that the independent crime was committed by the defendant"; and (2) " 'sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter.' " *Chastain v. State*, 260 Ga. 789, 790-791 (400 SE2d 329) (1991). There are substantial similarities between the prior offense and the current charges: (1) a near accident was involved in the prior offense while an actual accident was involved in the current offense, (2) both offenses occurred in rural portions of Clayton County, (3) both incidents occurred at approximately the same time of the evening,[2] and (4) the results of both Intoximeter tests revealed similar alcohol concentration levels.[3] Accordingly, we hold the trial court properly determined that the transactions were sufficiently similar so as to make the existence of the prior conviction probative of bent of mind or course of conduct in the current case.

5. Defendant contends there was insufficient evidence in the record for a rational trier of fact to find defendant guilty beyond a reasonable doubt as required by *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). First, the State must show that defendant had been drinking prior to driving. While there is conflicting evidence concerning whether the defendant had been drinking when the accident occurred, or, as the defendant contends, he only consumed alcohol *after* the accident while at the nearby house of an acquaintance, there is sufficient evidence to support the jury's verdict that the defendant had been drinking prior to the accident. The officer arrived at the accident scene at 10:30 p.m. At that time, he noted that the accident scene appeared "fresh." This statement was based on his observance that fluids were still leaking from the engine when he arrived. Although the officer admitted he never actually touched the engine, he testified that the engine was still warm when he first surveyed the wreck. On the other hand, the defendant testified that the accident occurred between 8:30 p.m. and 9:00 p.m. and that he began drinking afterwards. Matters of witness credibility are within

---

[2] The prior incident occurred at 9:30 p.m. while the current incident occurred between 8:30 p.m. and 10:19 p.m.

[3] The prior offense involved a .13 blood alcohol content while the current offense involved a .14 blood alcohol content.

the purview of the jury. The jury could reasonably have chosen to believe the facts as recounted by the officer over those of the defendant. "The obligation to weigh the evidence and to determine witness credibility rests with the jury. 'This court considers only the sufficiency of the evidence. . . .' [Cit.]" *Ailion v. Wade*, 190 Ga. App. 151, 155 (378 SE2d 507) (1989).

The State must also show that defendant was a less safe driver as a result of the drinking. There is sufficient evidence to support the jury finding that defendant was a less safe driver. The officer testified that "he [defendant] was under the influence of alcohol at the time of the accident and was a less safe driver during that time." Furthermore, it is undisputed that defendant crossed over the left lane of traffic, ran off the road, and damaged his vehicle. This is sufficient evidence for a jury to find beyond a reasonable doubt that the defendant in this case was intoxicated "to the extent that it is less safe for [him] to drive."

*Judgment affirmed. Carley, P. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 8, 1992 —
RECONSIDERATION DENIED SEPTEMBER 25, 1992 —

*Virgil L. Brown & Associates, Virgil L. Brown, Bentley C. Adams III, Eric D. Hearn,* for appellant.

*Keith C. Martin, Solicitor, Jackie N. Stanton, Assistant Solicitor,* for appellee.